672 P.2d 973
HUSKY FENCE COMPANY, INC., Petitioner Employer,

Safeco Insurance Companies, Petitioner Carrier,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

Dwayne Jones, Respondent Employee.

No. 1 CA–IC 2871.

Court of Appeals of Arizona, Division 1, Department C.

Sept. 15, 1983.

Review Granted Nov. 15, 1983.

**22**

O'Connor, Cavanagh, Anderson, West-over, Killingsworth & Beshears by Lawrence H. Lieberman, Larry L. Smith, Phoenix, for petitioner employer and petitioner carrier.

James A. Overholt, Chief Counsel, The Industrial Com'n of Arizona, Phoenix, for respondent.

Frank W. Frey, Tucson, for respondent employee.

## OPINION

JACOBSON, Chief Judge.

This review of an award of the Industrial Commission puts in question the authority of an administrative law judge to determine the credibility of a claimant by discounting his sworn testimony in the proceedings before the administrative law judge.

This matter was initiated by the claimant, Dwayne Jones, filing a claim for workers' compensation benefits on February 24, 1981, alleging that he suffered an injury when he inhaled welding fumes while employed by Husky Fence Company, Inc. The alleged injury occurred on October 28 and 29, 1980, when the claimant testified that he became ill after breathing welding

fumes. This claim was denied by the carrier. The matter proceeded to hearing, following which the administrative law judge entered an award finding that the claimant suffered from a preexisting idiopathic asthmatic condition which was aggravated by the inhalation of welding fumes and therefore suffered a compensable injury. (Whether that aggravation was temporary or permanent was not determined by the award.) The sole issue on review of that award by the employer and carrier is whether the administrative law judge could legally find the existence of the preexisting asthmatic condition.

The evidence surrounding this narrow issue is that following the exposure to fumes on October 29, 1980, the claimant sought emergency medical treatment at the Yuma Regional Medical Center. Records from the medical center, which were introduced by the carrier, showed that upon admission the claimant complained of difficulty in breathing. A history taken at that time revealed that the claimant had asthma attacks as a child, but that after going to Alaska he was symptom free for 22 years, and that he returned to Arizona in 1977 and for three years had been suffering from asthma attacks. Records of a subsequent visit by the claimant to the medical center reflect a history of "lifelong asthma."

Dr. Clive O. Deutscher, who treated the claimant at the Yuma Regional Medical Center, diagnosed claimant's condition upon admission as asthma, status asthmatiais, respiratory failure "plus or minus", hyperliporotein and hypertension. Dr. Deutscher testified that the claimant gave him the following history:

He gives a long history of asthma, going back more than 25 years. However, while in Alaska for 20 years, he had no symptoms. Since his return, three years ago, he has had increasing problems with shortness of breath, wheezing, cough and sputum. Over the last several days, his sputum has become purulent . . . .

However, when examined by Dr. Schwartzberg and Dr. Peter Kelly, at the carrier's request in November, 1981, both doctors testified that the claimant denied any asthma or respiratory problems prior to October, 1980. Dr. Kelly testified that the claimant specifically told him that he was well and without any respiratory problems until October 29, 1980 (the alleged date of his injury).

On November 10, 1981, the claimant's deposition was taken, under oath, and he was specifically questioned concerning his pre-October, 1980, asthma problems. A portion of his depositional testimony is as follows:

Q Prior to the time you came down here in October of '78, had you ever had any respiratory problems?

A No.

Q No problems with your lungs?

A (Witness nodding head up and down.)

Q You are indicating "no," sir?

A No.

Q You have to answer for the lady; right?

A Right.

Q Did you have any chronic cough?

A No.

Q Do you [know] what I mean when I say "chronic"?

A Continuous.

Q Right.

A No.

Q Did you have any chronic wheezing?

A No.

Q Did you spit up phlegm on a chronic basis?

A No.

Q Prior to 1978?

A No.

Q Did you smoke, sir?

A No.

Q Cigarettes or cigars or a pipe?

A No.

\*    \*    \*    \*    \*    \*

Q . . . Did you ever as a child or before you went up to Alaska have any respiratory problem such as asthma?

A No.

Q You never had asthma as a child?

A I had hay fever.

Q Did you ever tell doctors here in Arizona who treated you for your chest condition that you had asthma as a child?
A To my knowledge, no.
Q And if you said that to them, that would not have been true?
A No.
Q You would have no reason in the world to tell people in the hospitals that saw you that you had asthma as a child?
A No.
Q Because you never had asthma?
A No.
Q You had hay fever as a child?
A Yes.
Q How did the hayfever manifest itself?
A Runny nose, sneezing. That's essentially it.
Q Shortness of breath?
A I don't recall any shortness of breath.

\* \* \* \* \* \*

Q I'm just wondering, Mr. Jones, why some of the nurses at the hospital would have written down that you told them you had asthma attacks when you were a child.
A I've heard this too. I don't recall it myself.
Q It appears not one place in your history, but a number of different places. Do you have any explanation for that?
A No.
Q Your answer is "no"?
A No.
Q Is it your testimony under oath that you never told anyone that you had asthma attacks when you were a child?
A No, I don't recall.
Q Excuse me.
A I don't recall testimony of this nature.
Q Did you ever tell Dr. Deutscher that you had a long history of asthma going back more than 25 years; however, while you were in Alaska for 20 years you had no symptoms?
A No.

The claimant was unable to attend the formal hearings in this matter, and his counsel introduced this deposition in support of his claim.

The claimant has basically been unemployed because of his respiratory problems since leaving Husky Fence in October, 1980.

The medical evidence at the hearing established that inhaling welding fumes does not cause asthma, that in fact, the claimant does presently suffer from severe respiratory problems, that if the claimant had no prior asthma problems, his present condition is not caused by the industrial incident, and that if the claimant had a preexisting asthmatic condition, the inhalation of welding fumes would aggravate that condition.

The administrative law judge resolved the conflict concerning the existence or non-existence of pre-October, 1980 asthma by finding:

The applicant's October 1980 and November 1980 statements [made to treating physicians] are more credible than those conflicting November 1981 statements made to physicians to whom he had been referred by the defendants. The applicant's October 1980 and November 1980 statements are more credible than his conflicting November 1981 deposition statements made in clear contemplation of litigation after his workmen's compensation claim had been denied and contested for over four months. A preponderance of credible evidence establishes the applicant had suffered asthma symptoms prior to October 28, 1980.

As previously indicated, based upon this finding, the administrative law judge determined that the claimant experienced an aggravation of his preexisting asthma condition by the inhalation of welding fumes and thus, legally, suffered a compensable injury.

The carrier's basic contention on appeal is that while the administrative law judge has inherent authority to determine the credibility of parties before him, a party should not be able to prevail on a set of facts which that party denies under oath exists.

The carrier has cited to the court several cases which stand for the proposition that a party who testifies on the stand may not

recover on a set of facts which the party unequivocally testifies are not so. *See* 32A C.J.S., *Evidence* § 1040(3) at 778 (1964) and cases cited therein. The rationale of most of these cases is that the testimony of a party under oath and from the stand is a form of judicial admission which is conclusive and bars the party himself from disputing it, either by his own testimony or by other witnesses. *See* 9 J. Wigmore, *Evidence* in Trials at Common Law § 2590 (Chadbourne rev. 1981).

In our opinion, the rigid application of such a rule, while judicially economical, may thwart justice as well as serve it. This is for the reason that human experience recognizes that a party as well as other witnesses may honestly mistake the truth and the trier of fact should weigh all the evidence, whatever its source, in ascertaining that truth.

However, this court is not prepared to succumb to the cynicism expressed by the administrative law judge in this matter—that we can expect people to lie under oath if it is "made in clear contemplation of litigation." Such an attitude not only demeans the oath as such, it casts aspersions on the many honest parties who do speak the truth. Some credence to sworn testimony must be accorded for "it would be as absurd, as it manifestly would be unjust, to allow a party to recovery after he has clearly and unequivocally sworn himself out of court." *Harlow v. Leclair*, 82 N.H. 506, 510, 136 A. 128, 131 (1927).

In our opinion, the court in *Harlow v. Leclair, supra*, has struck the right cord in determining whether a party may be permitted to contradict his own sworn testimony, that is, a party may do so "if the circumstances are consistent with honesty and good faith." *Harlow v. Leclair*, 136 A. at 130, 131. Some of the factors to be considered in ascertaining whether a party's testimony is honestly and in good faith mistaken are (1) whether at the time of the occurrence about which the testimony is offered and at the time of testifying, the party was in full possession of his mental faculties; (2) whether the nature of the

facts testified to indicate they are merely impressions of an observor or are they facts particularly within the personal knowledge of the party; (3) whether the effect of his testimony is clear and unequivocal or internally inconsistent and confusing.

As stated in *Harlow v. Leclair, supra*, (quoted in 9 J. Wigmore, *supra*, § 2594(a), at 482):

> If a party's mental faculties are undeveloped or impaired, if his comprehension of his testimony is doubtful, if it relates to objective matters about which he may be mistaken, and he is contradicted by other witnesses, or if his statements are inconclusive, the effect of his testimony may be for the jury. But when a man of mature years and unimpaired mentality testifies understandingly and definitely to facts peculiarly within his knowledge, any rational conception of justice demands that he be judged by what he says.

We adopt this standard and applying it to this case, there is no contention that at the time the claimant's deposition was taken that he was not in full possession of all his mental faculties. Since this deposition was introduced into evidence in lieu of his testimony, we consider that deposition as if the claimant was testifying from the stand. The facts to which the claimant testified (the existence or non-existence of asthmatic symptoms) are peculiarly within the personal knowledge of the claimant. Only he would know whether in the past he experienced asthma attacks. His testimony is clear and unequivocal that he never, prior to October 28, 29, 1981, suffered from asthma. Moreover, he denied, under oath, telling any other person that he did so suffer.

Under these circumstances, the claimant's testimony must be true or deliberately false. If it is true, no basis exists for the administrative law judge's determination that his inhalation of welding fumes aggravated a preexisting asthma condition. If it is deliberately false, the integrity of the judicial system and public policy will not allow the claimant to obtain a favorable ruling based upon a finding that he has perjured himself. Contrary to the position

taken by the dissenter, this is not to "punish" the claimant, rather the claimant cannot be rewarded for this perjury.

■ We therefore hold that under the circumstances presented here, the claimant's sworn testimony is conclusive upon the trier of fact and may not be contradicted by other evidence, regardless of its source. Given the non-rebuttable fact that the claimant does not have preexisting asthma, the administrative law judge's award is not supported by the evidence.

Award set aside.

BROOKS, P.J., concurs.

CORCORAN, Judge, dissenting.

I respectfully dissent.

The deposition testimony of claimant contradicts the statements he made to the physicians when he sought treatment for his severe respiratory problems. The administrative law judge was in the best position to resolve the conflict. In considering *all of the evidence,* not just the conflicting statements by claimant, he determined that the "preponderance of credible evidence establishes the applicant had suffered asthma symptoms prior to October 28, 1980."

Dr. Deutscher and Dr. Gerald F. Schwartzberg examined claimant. They concluded that claimant suffered from asthma which was aggravated by breathing welding fumes. They relied not only on the information they received from claimant and from the hospital records but on their examinations of claimant. If the award made by the administrative law judge was based solely on claimant's conflicting statements, the conclusion reached by the majority might be appropriate. However, where, as here, evidence in the record supports the award, this court is not authorized to punish claimant by setting aside his award.

I believe that the award should be affirmed.